NOT DESIGNATED FOR PUBLICATION

No. 120,760

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JODI R. PAPPADA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed June 5, 2020.
Affirmed.

*Hope E. Faflick Reynolds*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

PER CURIAM: Jodi R. Pappada, an insurance agent, was found guilty of committing a fraudulent insurance act and forgery. After closing arguments, one of the State's witnesses entered the elevator with and briefly spoke to at least one member of the jury. In this appeal, Pappada contends she should be granted a new trial based on juror misconduct. Because the district court held a hearing on the matter and followed the course of action suggested by Pappada at the time, we apply the invited error doctrine and affirm her convictions.

1

In spring 2017, Pappada worked as an insurance agent for Farmers Insurance (Farmers). She had four rings insured through Farmers for additional coverage above and beyond what her general home insurance policy covered. In early March 2017, Pappada increased the scheduled value on all of the rings based on appraisals from a jewelry store.

A few weeks later, Pappada took her rings to Kansas City where she celebrated her daughter's birthday. After returning a couple of days later, Pappada claimed she lost her rings during the trip. Pappada said she contacted the hotel where she stayed and the restaurants she visited, but no one had found the rings. Pappada submitted an insurance claim on the lost rings in early April 2017.

William Hamline, a special investigator for Farmers, began investigating Pappada's claim and noted multiple issues with the appraisals used as the basis to increase the scheduled value of two of the rings. When he requested the appraisals on the other two rings, Pappada told Hamline she had the appraisals and would fax them to him. The next day she claimed she could not find those appraisals.

Hamline spoke with a manager for Riddle's Jewelry—the purported appraiser—who told Hamline he could verify they had appraised two rings for Pappada in 2015, but there was no record of a more recent appraisal on any of the rings.

In late June 2017, Pappada withdrew her insurance claim, stating she found her rings.

The State ultimately charged Pappada with one count of fraudulent insurance act and two counts of forgery. At trial, Pappada testified her husband obtained the appraisals. She explained that throughout the relevant time period the relationship between she and

2

her husband was rocky and she was planning on filing for divorce. Pappada acknowledged that early in the case she said she, rather than her husband, was the one who sent the rings off for appraisal. Pappada maintained she was unable to find the appraisal for two of the rings, and Riddle's had no record of the appraisals. But she also acknowledged increasing the scheduled value of two of the rings without an updated appraisal of any kind backing up the increase.

At the lunch break after closing arguments, the judge and defense counsel noticed Ryan Morton, a fraud investigator for the Kansas Insurance Department, entered the elevator with at least one juror. After the lunch break, the district court held a hearing to address whether any inappropriate conduct had occurred.

Morton was called to the stand and testified he did not recall any conversation inside the elevator. But outside the elevator, as they were exiting the courthouse, one juror apologized for walking down the stairs slowly. Morton said it was not a problem. When they got outside, the juror commented on the nice weather, and Morton agreed with her. Morton did not have any other conversation with a member of the jury.

Defense counsel cross-examined Morton, asking why he felt compelled to go on the elevator with members of the jury. Morton replied, "It wasn't something that occurred to me. I was just needing to go to lunch."

The judge offered counsel the option to bring in the jurors involved and question them. Defense counsel replied:

> "I suppose we can—we don't have many options at this juncture. He has sworn under oath that that was the extent of his conversation. I'm not sure how much further we can go but I would ask maybe that now that he understands that—I don't see any reason why

he needs to remain. I don't want him sitting in here with the women that he rode the elevator with. I just don't think it's right and I don't see any reason that he has to stay."

The district court considered its options, saying:

"From the Court's perspective though both parties are provided the right to a fair trial and even something as common as discussing the weather could easily be seen as an attempt to ingratiate yourself with that juror and to garner favor even if you're not discussing the case, just as simple as oh, he's a nice guy. That type of impression is something that they may have gained outside of the courtroom and not provided for in testimony or their observation of him on the stand and it's inappropriate. I agree at this point that I think an admonition he now understands not to do that. And I also put that on the State because it's your responsibility to manage your witnesses. And my expectation is that when I excuse a jury for lunch—I do this, my staff does this—we intentionally wait a beat. And [defense counsel] probably saw that I was coming down the hallway after the jury had already gotten out and down. And when I approached he was—that being your investigator—was getting on the elevator, I could only see maybe the back of the head of a female and [defense counsel] identified who it was, the door shuts."

Ultimately, the district court followed defense counsel's suggestion and required Morton to be outside the courtroom any time the jury was present. The district court asked both parties if they had anything to add, and neither did. No motions were made at the time.

The district court allowed the jury to continue its deliberations. The jury found Pappada guilty on all counts.

Pappada filed a motion for judgment of acquittal and a motion for mistrial. In her motion for mistrial, Pappada argued her right to a fair trial was denied by Morton entering the elevator and speaking with at least one juror. At sentencing, the district court denied Pappada's motions. The district court reiterated that the contact between Morton and the jurors was minimal and consisted of mere pleasantries. The district court

4

acknowledged the contact was not ideal but reasoned it was not severe enough to warrant a mistrial.

The district court granted Pappada probation with an underlying 13-month prison sentence.

Pappada timely appeals.

ANALYSIS

On appeal, Pappada argues she was deprived of a fair trial because Morton spoke with at least one juror, claiming this impermissible misconduct substantially prejudiced her right to a fair trial. She contends the district court erred by denying her motion for mistrial. The State responds in part by raising the issues of preservation and invited error. Because we must first address these two questions and one of them is determinative of the appeal, we make no conclusion about whether the brief contact between a witness and a juror in this case actually constituted juror misconduct. See *State v. Robinson*, 303 Kan. 11, 299-304, 363 P.3d 875 (2015) (presuming juror misconduct but finding no prejudicial error).

A. *Preservation*

The State argues Pappada failed to preserve her arguments because defense counsel made no verbal motion for a mistrial at the time the communication between Morton and the juror came to light.

In support, the State relies on *State v. Buggs*, 219 Kan. 203, 207, 547 P.2d 720 (1976), where the Kansas Supreme Court reiterated: "'Where alleged juror misconduct claimed as prejudicial is known by the party or his counsel prior to rendition of a verdict,

5

and no objection is made, nor the matter brought to the court's attention, the party cannot later assert the misconduct as grounds for a new trial.'" The Supreme Court explained the requirement to report alleged misconduct to the district court allows a hearing to be held to remedy the situation, if possible. "If not, a mistrial may be declared immediately without wasting the time and expense required to complete the trial. . . . A party is not permitted to remain silent in the face of known error, gamble on the verdict, and show his hole card only if he loses." 219 Kan. at 208.

Here, while Pappada did not move for a mistrial, she did not remain silent about the potential juror misconduct. The potential misconduct was addressed by the district court, and a solution was proposed and implemented. We find Pappada properly preserved the issue.

B.      *Invited error*

After cross-examining Morton and declining the opportunity to question the jurors, Pappada argued that to remedy Morton's misconduct, he should be required to leave the courtroom while the jury was present. The district court agreed with Pappada's suggested course of action and required Morton to leave the courtroom. When asked if anyone had anything else to add, Pappada's counsel stated, "No."

Generally, a litigant may not invite an error and then complain of the error on appeal. *State v. Stewart*, 306 Kan. 237, 248, 393 P.3d 1031 (2017). Whether the doctrine of invited error applies "is a question of law subject to unlimited review." *State v. Parks*, 308 Kan. 39, 42, 417 P.3d 1070 (2018).

> "The doctrine of invited error precludes a party from requesting a court to rule in a particular manner and then subsequently claiming that the court's ruling granting the party's request was erroneous. In other words, if a party gets what that party asks for, the

6

party cannot be heard to complain later. [Citation omitted.]" *State v. Lehman*, 308 Kan. 1089, 1092-93, 427 P.3d 840 (2018).

The State argues Pappada invited the alleged error by suggesting the district court should bar Morton from remaining in the courtroom with the jury for the rest of the trial. A similar situation occurred in *State v. Church*, No. 118,311, 2019 WL 3210222 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* August 5, 2019, where another panel of our court addressed invited error after a juror was using his phone while evidence was being presented. Defense counsel objected to the juror's conduct but did not request a mistrial based on the juror's actions. Instead, counsel only requested the jurors be admonished. The district court agreed and addressed the jurors, reminding them cell phones were not to be used during trial.

On appeal, Church argued the district court should have declared a mistrial based on the juror's conduct. The panel disagreed, holding Church's argument was misplaced and unpersuasive. Church "requested that the juror be admonished for his or her actions," and the panel reasoned that "[r]equiring reversal here would ignore that Church invited the alleged error." 2019 WL 3210222, at *6.

Like *Church*, Pappada requested the particular action taken by the district court after the alleged juror misconduct. Pappada did not request a mistrial before the jury reached its verdict; instead, she requested that Morton not be allowed to remain in the courtroom with the jury present. The district court granted Pappada's request. Under the circumstances, Pappada is precluded from complaining about an error she invited. We therefore decline to address the merits of her claim.

Affirmed.

7